Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>REAL PROPERTY KNOWN AS 107 NORTH RUBY STREET, ELLENSBURG, WASHINGTON, TOGETHER WITH ALL APPURTENANCES, FIXTURES, ATTACHMENTS, AND IMPROVEMENTS THERETO AND THEREUPON,<br><br>Defendant. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Brian M. Donovan, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 1

## I.  <u>NATURE OF THE ACTION</u>

1.     This is an action to forfeit and condemn to the use and benefit of the

United States of America the following listed real property, hereafter the "Defendant

Property," for violations of Title II of the Controlled Substances act, 21 U.S.C. § 801

*et. seq*.

## II.  <u>THE DEFENDANT(S) *IN REM*</u>

2.     The Defendant property consists of the following property:

Real property known as 107 North Ruby Street, Ellensburg,
Washington, Parcel #: 147033, legally described as follows:

> Lot 9, Block 21, Ellensburg, in the County of Kittitas, State of
> Washington, as per Plat thereof recorded in Book 1 of Plats,
> Page 1, records of said County.

Together with all appurtenances, fixtures, attachment and
improvements thereto and thereupon.

Subject to all easements, restrictions, reservations and covenants of
record.

3.     The record owner of 107 North Ruby Street, Ellensburg, Washington, is

June B. Green Trust ("The Trust"). June B. Green ("Green"), an unmarried woman,

purchased the Defendant Property on September 30, 2011. On May 6, 2020, Green

transferred the Defendant Property to the Trust for $0 of consideration. The Defendant

Property is a single-family residence.

## III.  <u>JURISDICTION AND VENUE</u>

4.     Plaintiff brings this action *in rem* in its own right to forfeit and condemn

the Defendant Property.  This Court has jurisdiction over an action commenced by the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 2

United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

### IV.  BASIS FOR FORFEITURE

7.      Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 6 above.

8.      The United States alleges that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7) because it constitutes property used or intended to be used to commit or facilitate violations of the Controlled Substance Act ("CSA"), and pursuant to 21 U.S.C. § 856(a)(1) because the property is knowingly maintained for the purpose of using controlled substances and § 856(a)(2) because the property is knowingly made available for use for the purpose of unlawfully distributing or using a controlled substance. As a result of the foregoing, the Defendant property is liable to condemnation and forfeiture to the United States.

### V.  FACTS

9.      The Defendant Property was purchased on September 30, 2011, by June Green, and remained in Green's possession and under her control during all relevant times in this Complaint, including after she transferred the Defendant Property to the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 3

Trust. The title to the property is free of any voluntary or involuntary encumbrances. June Green occupied the Defendant Property, along with her daughter, Lisa Schelper, and son, Steven Schelper during all times relevant in this Complaint. Several other individuals, known and unknown to law enforcement, also regularly occupy the Defendant Property. June Green was aware of and participated in the drug activity taking place at the Defendant Property during all times relevant in this Complaint. The June B. Green Trust was also aware of the drug activity on the Defendant Property at all times it was the owner.

10.     Ellensburg Police Department ("EPD") became familiar with the Defendant Property, and its owner and occupants, in 2014 due to repeated and frequent visits to the Defendant Property. Since 2014 until present, EPD contacted the Defendant Property over 300 times. Green, her children, and those they allow to reside at the Defendant Property have repeatedly used the Defendant Property to facilitate their drug use and drug distribution. The Defendant Property is in the heart of Ellensburg and the drug-related activity at the property has significant impacts on the community. The Defendant Property is on the same block as a preschool and only one block away from the public library and a church in one direction and the local middle school in another. It is two blocks away from the EPD station, where June Green has repeatedly sought assistance from law enforcement for issues affecting the Defendant Property including discarded property, trespassers, and graffiti—but never sought their assistance to curtail the violations of the CSA.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 4

A.    Controlled Substance Violations Involving the Defendant Property and its Residents

11.    On July 16, 2014, EPD responded to assist Kittitas Valley Fire and Rescue ("KVFR") with an overdose reported at the Defendant Property. The overdosing individual was completely unresponsive but breathing. Police recovered multiple prescriptions from the individual's person including one for oxycodone. The individual was immediately transported to the hospital. EPD was familiar with the individual from prior contacts.

12.    On June 10, 2015, June Green was charged in Kittitas County with two counts of possession of a controlled substance, one count each for oxycodone and methamphetamine, and use of drug paraphernalia, for conduct occurring December 11, 2014. She pleaded guilty to possession of methamphetamine on September 25, 2015.[1]

13.    On March 22, 2016, EPD conducted two controlled purchases of methamphetamine at Defendant Property using a CI. The CI purchased 5.1 grams of methamphetamine from Lisa Schelper ("L. Shelper"). The CI returned to Defendant Property later that day to purchase 5.4 grams of methamphetamine from L. Schelper.

---

[1] All Washington State convictions for simple possession of a controlled substance were vacated pursuant the Washington State Supreme Court's decision in *State v. Blake*, 481 P.3d 521 (Wash. 2021).

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 5

The CI noted several individuals were present during the second purchase; the individuals were smoking methamphetamine and/or heroin inside Defendant Property. L. Schelper was arrested on March 30, 2016, on charges of delivery of a controlled substance. She was later charged by amended information in Kittitas County Superior Court with two counts of possession of a controlled substance and pleaded guilty to both counts on September 12, 2016.

14.     On March 24, 2016, EPD conducted two controlled buys of heroin at Defendant Property using a confidential informant. The CI purchased 5.6 grams of heroin from an individual present at Defendant Property. The CI returned to Defendant Property later that day to purchase 5.7 grams of heroin from the same individual. The individual who sold the heroin to the CI was arrested on March 30, 2016. The same day, EPD served a search warrant on the Defendant Property to search for evidence of the controlled buys described above, but no evidence was found.

15.     On October 22, 2016, EPD observed a known individual standing at the front door of the residence at the Defendant Property. EPD contacted the individual who had an outstanding felony arrest warrant. Prior to placing the individual in handcuffs, the arresting officer noticed a crumpled piece of aluminum foil on the ground near the individual's feet. The officer asked the subject about the foil and the subject said it did not belong to him. The officer inspected the contents of the foil and observed several pieces of crystal substance consistent with methamphetamine. The

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 6

foil packet and its contents were seized, placed in an evidence bag and transported back to EPD, where they tested presumptive positive for methamphetamine.

16.    On March 17, 2017, EPD interviewed an assault victim at the hospital. The victim stated the assault occurred at the Defendant Property earlier that day. The victim had arrived at the Defendant Property after attending a Narcotics Anonymous meeting and was met by Steven Schelper ("S. Shelper"). The victim asked S. Schelper to smoke methamphetamine with him because S. Schelper owed the victim money. S. Schelper agreed and the two entered one of the bedrooms where S. Schelper produced a bag of methamphetamine. According to the victim, at least three other individuals were present in the room. Someone in the room asked the victim to confirm his name, and the victim was assaulted immediately thereafter. The victim did not file charges for the assault.

17.    On June 2, 2017, EPD responded to a reported theft from a Safeway located about three blocks from the Defendant Property. Police encountered L. Schelper and S. Schelper, who indicated the suspect had fled into the residence. L. Schelper went into the residence to locate the suspect, but stated the suspect was no longer there. A short time late, the suspect contacted EPD via telephone and said she was willing to speak with police outside. Police located a shopping bag containing the stolen items in an alley near the Defendant Property, which also contained a small purse. Upon meeting police, the suspect consented to a search of the purse. Inside the purse, police located a United States passport belonging to the suspect along with

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 7

several items consistent with heroin use, including were several squares of aluminum foil, a metal pen tube commonly used to inhale narcotics, and a piece of aluminum foil with black streaks and burn marks. A hard, black object consistent with brown tar heroin was in the center of that piece of aluminum foil. When asked about the items, the suspect stated she was unaware they were in her purse because she would have consumed the heroin had she known it was there. The suspected heroin was confiscated and later tested; the test was positive for heroin. The suspect also confessed to stealing the items from Safeway.

18.     On July 5, 2017, EPD observed a maroon Cadillac stop in front of the Defendant Property. EPD was familiar with the vehicle and its owner. A patrol officer contacted the vehicle after recognizing the passenger of the vehicle who had an active felony arrest warrant. The suspect exited the vehicle and was placed in handcuffs. While searching the suspect incident to arrest, the officer located a pouch tied to the drawstring of the suspect's shorts. Inside the pouch, police observed a black digital scale and a small amount of crystal substance consistent with methamphetamine at the bottom of the pouch. Police also observed a brown tar-like substance and white residue on the surface of the scale. The suspect also had two groups of cash, one bundle of $155 and another bundle of $150. All items were confiscated and taken in as evidence. The residue on the scale was tested by the forensic lab and tested positive for methamphetamine and heroin.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 8

19.     On October 20, 2018, EPD responded to a call from an individual at the Defendant Property requesting assistance with an unconscious, unresponsive male subject who had overdosed. KVFR was on scene when EPD arrived. KVFR was able to revive the subject by administering Narcan. EPD spoke with the subject's girlfriend who was present at the Defendant Property. She did not know what had caused the overdose but knew the subject to use opiates. The girlfriend indicated she and another individual had already administered an injection of Narcan before KVFR had arrived, but the dose was ineffective. KVFR informed EPD their staff was familiar with the subject from prior overdose encounters. KVFR had revived the subject using Narcan less than one week prior. Additionally, the subject overdosed in the nearby Safeway bathroom the previous day and was revived with Narcan.

20.     On October 31, 2018, EPD responded to a call from L. Schelper, requesting assistance with an overdose at the Defendant Property. L. Schelper informed EPD she had just administered two nasal applications of Narcan and one injection of Narcan on the same individual who had overdosed October 20, who had again overdosed after using heroin. When L. Schelper led EPD officers into the Defendant Property to check on the subject, the officers learned he had fled from the house. The officers were able to locate the subject behind a shed in the back yard of the Defendant Property. One of the responding officers was familiar with the subject and knew the subject to be a frequent and long-time drug user. When questioned about

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 9

his sudden series of overdoses, the subject told the officer there was bad heroin all over Ellensburg.

21.     On December 27, 2018, EPD executed a search warrant on the Defendant Property. While conducting a video walk-through of the Defendant Property, police observed three sharps containers holding a significant number of syringes. Police also observed in plain view several syringes and pieces of tin foil consistent with signs of heroin consumption. Additionally, a loaded syringe containing suspected heroin was located on the floor in the living room near a small box containing several small pieces of black substance. A clear bag containing a crystalline substance consistent with methamphetamine was laying in plain view on a table in the living room. Police located a foil package in the living room, which contained a dark substance consistent with heroin. In the kitchen, police observed six white pills on a plate. The pills were inconsistent in size and did not display any observable markings, characteristics of illegal pill manufacturing. A bedroom in the basement also contained signs of drug use, specifically a loaded syringe holding a mixture of suspected heroin and blood. All drug-related items were confiscated and logged into evidence. June Green was arrested and charged in Kittitas County Superior Court with possession of a controlled substance (methamphetamine) and unlawful use of a building for drug purposes. L. Schelper was also charged with possession of a controlled substance (heroin). Both were released pending trial.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 10

22.     On March 18, 2019, EPD responded to a vehicle and personal property theft report. The stolen vehicle was located in the driveway of the Defendant Property and the suspect was located inside the Defendant Property. Police contacted the suspect. The suspect was in possession of the complainant's wallet and a prescription bottle bearing the complainant's name and containing seventeen (17) 20mg Oxycontin pills. The complainant indicated the bottle should have contained seventy-eight (78) 20mg Oxycontin pills, leaving sixty-one (61) pills unaccounted for. The suspect was arrested for the motor vehicle theft, personal property theft, and possession of a controlled substance.

23.     On August 16, 2019, EPD arrested a suspect in a burglary, who told EPD he had met S. Schelper earlier in the day. The burglary suspect had told S. Schelper he was looking for cocaine and a girl, and S. Schelper had brought the suspect back to the Defendant Property. While the suspect attempted to get L. Schelper to come back to his hotel, another resident of the Defendant Property came up from the basement and provided the suspect cocaine in exchange for $80, which they snorted off a mirror. The suspect stated that "everyone" was also smoking heroin off foil. He provided EPD a foil bindle with remnants of black tar heroin, which he said L. Schelper had given him to hang on to after smoking some of the heroin. He had another foil bindle in his pocket and was unsure where the packet was from.

24.     On September 24 and November 22, 2019, June Green was arrested at the Defendant Property on felony warrants related to her charges from December 27,

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 11

2018. On November 25, 2019, in addition to the drug charges stemming from the December 27, 2018, search of the Defendant Property, Green was charged in Kittitas County Superior Court with two counts of bail jumping.

25.     On May 13, 2020, a CI contacted EPD and advised they had arranged to buy heroin from L. Schelper at the Defendant Property. EPD utilized the CI to conduct a controlled buy and observed the CI enter the residence at the Defendant Property and later exit. The CI provided EPD the heroin they had purchased, which was later weighed at 7 grams including its plastic packaging. The CI reported that the transaction took place in the living room at the defendant property, and that while other individuals were present using controlled substances, L. Schelper was the only one who took part in the transaction.

26.     The same day, EPD obtained a wire order to intercept communications between the CI and L. Schelper, and the CI advised they could purchase more heroin from L. Schelper. EPD attempted to utilize the CI to conduct another controlled buy while outfitted with a recording device, but when the CI arrived at the Defendant Property, L. Schelper advised her heroin had been stolen and she had none to sell. The recording captured L. Schelper crying about losing one gram of heroin and $90 of proceeds from her heroin sales.

27.     On May 19, 2020, the CI informed EPD that they had arranged to purchase heroin from L. Schelper at the Defendant Property. EPD utilized the CI to conduct a controlled buy while outfitted with a recording device. EPD observed the CI

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 12

enter the residence at the Defendant Property and exit approximately 20 minutes later. The CI provided EPD with a clear plastic bag containing heroin. In addition to the bagged heroin, weighed at 7 grams, EPD found a piece of heroin under the CI's wristwatch which was packaged and weighed at 12 grams. The CI admitted they had pinched a piece of heroin from the product they had purchased from L. Schelper because they were withdrawing and did not want to be sick. The CI reported that after they were let inside the residence at the Defendant Property, they went downstairs to L. Schelper's room. The CI asked for half a gram of heroin, and L. Schelper weighed out a "point" of heroin and advised she had to get more upstairs. She returned with more heroin, which she told the CI weighed 0.42 grams. The CI advised EPD that other people were present at the Defendant Property, but only L. Schelper participated in the transaction. The wire recording captured Schelper asking the CI if they were going to shoot the heroin, meaning take it intravenously, and the CI responding that they did not have the necessary equipment. L. Schelper offered to ask around the house, saying someone might have equipment for heating up the heroin, but the CI responded they would smoke the heroin at home. The CI proceeded to talk with other residents in the house before leaving.

28.    On May 21, 2020, the CI contacted EPD and advised they arranged to purchase heroin from L. Schleper at the Defendant Property. EPD utilized the CI to conduct a controlled buy while outfitted with a recording device. EPD observed the CI enter the residence at the Defendant Property and exit approximately 10 minutes later.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 13

The CI provided EPD the heroin they had purchased and returned $7 of the $102 of government funds they were provided. The total weight of the heroin, including the plastic packaging, was 7 grams. The wire recording captured the CI speaking with L. Schelper regarding money and a weighing device.

29.    On June 10, 2020, L. Schelper was arrested on the three counts of delivery of a controlled substance and charged in Kittitas County Superior Court. On July 17, 2020, she pleaded guilty to three counts of delivery of a controlled substance (heroin) for the three controlled buys and one count of possession of a controlled substance (heroin) for the December 27, 2018, conduct and was sentenced to 20 months of confinement. The remaining charges were dismissed.

30.    On August 10, 2020, June Green pleaded guilty to possession of methamphetamine and unlawful use of a building for drug purposes, and her bail jumping charges were dismissed. She was sentenced to three months' confinement, with credit for time served.

31.    During the week of October 30, 2023, a CI advised EPD they could buy methamphetamine and counterfeit oxycodone pills from L. Schelper. The CI advised they would go to L. Schelper's workplace, a fast-food restaurant at a truck stop off the freeway, and either purchase drugs from L. Schelper there or arrange to meet her later. On or about November 2, 2023, EPD attempted to utilize the CI for a controlled buy at the restaurant, but L. Schelper had no drugs on her. The CI arranged to meet L. Schelper at her house after she finished work. The CI did not know the address of L.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 14

Schelper's house but referred to it as the "library house" and their description of the location was consistent with the Defendant Property. EPD successfully utilized the CI for a controlled buy later that night at the Defendant Property. EPD observed the CI enter the house at the Defendant Property and exit thirty minutes later. The CI provided EPD with methamphetamine in a plastic bag that was purchased from L. Schelper. The CI also returned a portion of the government funds provided for the buy as L. Schelper did not charge as much as anticipated. The CI reported that when they arrived at the Defendant Property, they were let in the front door by Tyler Fulgham, a resident of the Defendant Property. The CI went downstairs to L. Schelper's room in the basement, where June Green and another individual were present. The CI requested a specific amount of methamphetamine, and L. Schelper answered she was not sure she had enough but would look. L. Schelper got a bag, estimated the amount of methamphetamine the CI requested, and packaged it up. The CI estimated there was an 8-ball, or 3.5 grams, left in L. Schelper's bag. The methamphetamine purchased by the CI was later weighed at 8.9 grams, including all evidence packaging.

32.     During the week of December 18, 2023, EPD contacted the CI, who advised they had arranged to buy fentanyl pills from L. Schelper at the Defendant Property. EPD utilized the CI for a controlled buy and outfitted the CI with recording equipment to record the transaction. EPD observed the CI travel to the Defendant Property and enter the residence. The wire recording captured the CI interact with L. Schelper, Tyler Fulgham, and another individual inside the house. The CI asked L.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 15

Schelper how many pills the CI could get for the money they had, and L. Schelper responded by telling the CI how much she pays and how many she would sell to the CI for that amount. After approximately 20 minutes, the CI announced they were leaving, and L. Schelper advised the CI to tell her if the CI knew of anyone else looking for fentanyl pills. The CI provided EPD a number of blue pills marked M on one side and 30 on the other side, wrapped in clear plastic. The pills were consistent with pills EPD had purchased in the past from other individuals that were determined to be counterfeit 30 mg Oxycodone pills with fentanyl. The CI reported that Tyler Fulgham let them into the residence at the Defendant Property and advised L. Schelper was in the basement. The CI went to the basement, where L. Schelper and another individual were in her bedroom and Fulgham joined them. The CI reported that after purchasing the fentanyl pills, L. Schelper invited everyone to smoke methamphetamine provided by L. Schelper, which the CI did before leaving. The fentanyl pills were weighed instead of counted to reduce possible fentanyl exposure.

33.     During the same week of December 18, 2023, EPD met again with the CI, who believed L. Schelper would be home and would sell them fentanyl pills. On or about December 20, 2023, EPD utilized the CI to conduct a controlled buy and provided the CI with recording equipment. EPD observed the CI travel to the Defendant Property and go inside the residence. The wire captured the CI talking to L. Schelper and Tyler Fulgham. The CI asked L. Schelper how much they could get for the amount of money they had and the wire then captured what appeared to be the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 16

sound of pills rattling inside a pill bottle. The CI asked L. Schelper if there was something they could put the pills into, and L. Schelper told the CI she had something they could use. The CI then could be heard counting out pills. After talking further with L. Schelper and Fulgham, the CI left the residence, and Fulgham followed the CI to their vehicle. After a few minutes, Fulgham exited the vehicle and returned to the Defendant Property. The CI provided EPD the pills they had purchased contained in an empty cigarette box. The pills were blue and marked with M on one side and 30 on the other, consistent with counterfeit oxycodone pills containing fentanyl. The CI advised they had been let into the property by June Green and gone to L. Schelper's room in the basement, where they encountered L. Schelper and Fulgham. L. Schelper and Fulgham were smoking methamphetamine, but the CI did not use. The CI admitted that they had purchased 12 pills from Schelper but given two to Fulgham to repay a loan. EPD confirmed there were 10 blue pills inside the cigarette box.

34.    On February 14, 2024, L. Schelper was charged in Kittitas County Superior Court with one count of delivery of a controlled substance (methamphetamine), two counts of delivery of a controlled substance (fentanyl), and two counts of delivery of a counterfeit substance for her conduct during the series of controlled buys. Her charges are currently pending.

35.    During the week of October 30, 2023, a CI informed EPD they had communicated with Tyler Fulgham and arranged to buy fentanyl pills from him. The CI advised the buy was going to take place at the "library house." The CI did not

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 17

know the address of the "library house," but their description of the location was consistent with the Defendant Property. EPD utilized the CI to conduct a controlled buy on November 1, 2023. EPD observed the CI park on the Street near the Defendant Property and meet Fulgham on the front porch of the Defendant Property. The CI and Fulgham walked to the CI's vehicle and sat inside. Fulgham then exited the vehicle and returned to the Defendant Property, and the CI drove to meet with EPD. The CI provided EPD with an empty cigarette pack containing 11 blue pills with an M 30 imprint, consistent with prescription pharmaceutical oxycodone. The CI reported Fulgham sold the CI the pills in exchange for $40. The pills appeared similar to other counterfeit oxycodone pills that, when tested, contained fentanyl and no oxycodone.

36.     The CI informed EPD they had arranged to meet with Tyler Fulgham later, and EPD utilized the CI to conduct a second controlled buy on November 2, 2023. EPD provided the CI with recording equipment pursuant to a wire order obtained earlier in the day. EPD observed the CI travel to the Defendant Property and knock on the front door with no response. The CI opened the door and leaned in, and then walked into the residence out of view. The wire recording had some distortion but captured the CI yell for June several times with no response. The CI then yelled for Tyler, and a voice believed to be Fulgham responded. Fulgham asked the CI how many they were looking for, and the CI asked for however many $40 would get them. Fulgham could be heard verbally doing math and appeared to conclude the pills were $4.75 each. The CI asked Fulgham if he had any clear, which is slang for

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 18

methamphetamine, and Fulgham reported he had 2 grams. The CI told Fulgham they did not want to purchase such a small quantity and left the residence soon after. EPD observed the CI leave the residence and travel to their meeting location. The CI provided EPD a wrapper containing 9 blue pills consistent with those previously purchased from Fulgham. The CI reported that Fulgham was the only person they observed inside the Defendant Property. The CI had told Fulgham how much money they had to spend on pills, and Fulgham responded that June Green might have some pills and went downstairs. Fulgham returned with a quantity of pills and handed them to the CI in exchange for government funds.

37.    During the week of December 11, 2023, the CI sent EPD a screenshot of their communication with Tyler Fulgham. Fulgham had asked the CI if they knew anyone looking for powder, meaning fentanyl powder. The CI informed EPD they had arranged to purchase fentanyl from Fulgham. EPD utilized the CI to conduct a controlled buy from Fulgham on or about December 11, 2023, and observed the CI travel to the meeting location by car. Fulgham walked up to the passenger door and entered the vehicle. After a short time, Fulgham exited the passenger door and was observed returning to the Defendant Property on foot. EPD met with the CI, who provided EPD a clear plastic wrapper containing 9 blue pills stamped with M on one side and 30 on the other. The CI reported that Fulgham had entered their vehicle when they arrived at the meeting location and given the CI the pills, and the CI had given Fulgham the government funds in exchange.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 19

38.     On January 23, 2024, Tyler Fulgham was charged in Kittitas County Superior Court with three counts of delivery of a controlled substance with the aggravating factor that the offenses were a major violation because the offenses involved at least three separate transactions. He was also charged with three counts of delivery of a counterfeit substance (oxycodone). On April 15, 2024, Fulgham pleaded guilty to two counts of delivery of a controlled substance and was sentenced to 16 months of confinement.

39.     On May 17, 2024, June Green was charged in Kittitas County Superior Court with one count of Unlawful Use of Building for Drug Purposes in violation of RCW 69.53.010. The charge relates to the October 2023 through December 2023 controlled buys referenced in paragraphs 31-33, 35-37, *supra*. The criminal case against June Green is currently pending.

B.   <u>Other Criminal Violations Involving the Defendant Property and its Residents</u>

40.     In addition to the long history of controlled substance violations at the Defendant Property, there is a variety of other criminal activity centered around the Defendant Property and its residents.

*1. Assaults by Steven Schelper*

41.     On August 23, 2016, EPD visited the Defendant Property to arrest S. Schelper on an outstanding warrant. S. Schelper became very upset, screaming and swearing at the EPD officers. S. Schelper could be clearly heard at the preschool half

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 20

a block away from the Defendant Property. June Green and L. Schelper convinced S. Schelper to cooperate, and he was arrested and booked into jail on his warrant.

42.    On August 5, 2019, EPD responded to a report of threats at the Defendant Property. Two boys, 12- and 13-years-old, respectively, had been riding their bicycles on the road past the Defendant Property when S. Schelper told the boys to "come here" from the front yard of the Defendant Property. S. Schelper was carrying a baseball bat and aggressively hitting a fence while talking to the boys. When an EPD officer visited the Defendant Property, S. Schelper was sitting on the front porch with a golf club but went into the residence when the officer arrived.

43.    The responding officer then noticed a vehicle parked in front of the Defendant Property in which a woman appeared to be having a medical emergency; the woman was flopping around as if she was having a seizure. The vehicle's engine was not running, the windows were rolled up, and the outside temperature was over ninety degrees. The responding officer recognized the woman from previous contacts. The officer was able to speak with the woman and confirmed she was not having a seizure. However, her erratic movements and inability to converse led the officer to believe she may have been under the influence of narcotics, although she denied using them. The woman informed the officer that S. Schelper had become upset with her while inside the residence at the Defendant Property and had thrown a coffee table at her, which hit her in the legs. She ran into a bedroom and shut the door, but S. Schelper was able to get her out of the room, striking her head with the door in the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 21

process. S. Schelper then grabbed her by the legs and dragged outside, yelling at her, which was when the two boys rode by on their bikes. The officer was unable to contact S. Schelper but issued him a citation for assault in the fourth degree.

44.    On December 23, 2019, EPD responded to a welfare check and found a man with a deep knife wound to his hand. The man told EPD S. Schelper had cut his hand. EPD had contacted the man less than two hours earlier behind the Defendant Property in regard to a stolen backpack. The man was later walking by the library one block north of the Defendant Property when S. Schelper approached him and started arguing about the stolen backpack. S. Schelper drew a knife and swung it at the man, who raised his arms to defend himself. S. Schelper cut deeply into the man's right hand through the webbing between his thumb and forefinger, all the way to the base of the thumb. He also superficially cut the man's left arm. The man ran away from S. Schelper after the blow and sought assistance from a passerby. EPD contacted S. Schelper at the Defendant Property, who claimed to have simply held the knife vertically at chest height to defend himself, and that the man had grabbed the blade and cut himself. S. Schelper advised that the knife was over 12 inches long and that he had given it to a friend but refused to say who. When EPD informed S. Schelper he was under arrest, he began making additional threats toward the man, including that he would put the man in the hospital permanently. S. Schelper was initially charged with second degree assault in Kittitas County Superior Court and on January 24, 2020,

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 22

pleaded guilty to a reduced charge of third degree assault. He was sentenced to eight months of confinement.

45.    On October 7, 2020, EPD conducted a welfare check on S. Schelper, in the area of a hospital near the Defendant Property. S. Schelper was visibly angry and punching posts, trees and cars. S. Schelper appeared to be having a mental health crisis and voluntarily checked himself into the emergency department. EPD later returned to the hospital at the request of emergency department staff due to S. Schelper's combative behavior. While being subdued, S. Schelper kicked two EPD officers and was later charged in Kittitas County Superior Court with two counts of assault in the third degree. On November 30, 2020, he pleaded guilty to one count and was sentenced to four months of confinement.

46.    On January 9, 2022, EPD received a report that S. Schelper had assaulted Tyler Fulgham with a golf club. Fulgham had been transported to the hospital by a friend, where EPD contacted him about the assault. Fulgham had a one-centimeter gash on his head and blood on his head, face, neck, and shirt. Hospital staff advised stitches, but Fulgham requested it be glued shut. Fulgham reported that S. Schelper had been awake for several days due to his methamphetamine use and began hearing voices. He believed Fulgham was taunting him and assaulted Fulgham at the Defendant Property when Fulgham walked down the hallway past S. Schelper's room. After S. Schelper struck Fulgham four to five times with the shaft of the golf club, Fulgham attempted to "wrap him up" and immobilize him. S. Schelper continued

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 23

trying to punch Fulgham until June Green intervened and the two were separated. When EPD responded to the Defendant Property, S. Schelper initially threw two knives at a snowbank but was ultimately arrested without incident on suspicion of second degree assault with a domestic violence enhancement. His jacket and pants had blood on them and were seized as evidence. S. Schelper was charged in Kittitas County Superior Court, but the charges were later dismissed.

47.     On July 7, 2022, S. Schelper was charged in Kittitas County Superior Court with second degree assault for conduct unrelated to the Defendant Property. He pleaded guilty on August 19, 2022, and was sentenced to 16 months of confinement.

*2. Theft and stolen property*

48.     On May 2, 2019, EPD responded to a vehicle and personal property theft report. The complainant's brother had been staying with her family to work on his sobriety but had stolen the complainant's car and her son's money and cell phone. The complainant told EPD her brother might be staying at the drug house near the library, which EPD knew to be the Defendant Property. The complainant's car was located 100 feet south of the Defendant Property and her brother was located inside the Defendant Property.

49.     On April 25, 2020, EPD received a report of a stolen pickup truck. An officer had noticed the vehicle parked in front of the Defendant Property that morning, before receiving the stolen vehicle report. When the officer returned to the Defendant Property later that night, the stolen vehicle was still parked in front of the Defendant

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 24

Property. EPD contacted a man rummaging through the vehicle who claimed to have received the vehicle in exchange for his labor building a fence.

50.    On June 2, 2020, EPD received a report of a stolen bicycle overnight. Later that morning, an officer observed a bicycle matching the description of the stolen bike at the Defendant Property. There were a number of people at the Defendant Property, including June Green, L. Schelper, and Tyler Fulgham, who claimed to have no knowledge of where the bike came from, although L. Schelper eventually admitted that she believed another individual who frequented the Defendant Property had arrived on the bike shortly before midnight the previous night. Green advised EPD she wanted that individual trespassed from the Defendant Property. An additional bicycle was located at the Defendant Property and taken by EPD as found property.

51.    On August 18, 2020, June Green reported to EPD that her debit card had been stolen and she was missing approximately $3,000 from her account. She believed that a woman who frequented the Defendant Property, who was known by EPD to be a drug user, had stolen the card. Green was refunded the stolen money by her bank and advised EPD they could close their investigation after they had been unable to contact the suspect identified by Green.

52.    On August 29, 2020, an EPD officer recognized June Green waiting outside the parking area at the EPD station. When the officer contacted Green, she advised she had been cleaning out a room at the Defendant Property which had been

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 25

used by an individual recently arrested by EPD on three separate felony warrants. She found items that she did not want to be associated with, including mail belonging to a number of other individuals, several small caliber bullets, and keys, which she provided to EPD. On September 16, 2020, an EPD officer found a bag of mail on the door handle of the station. Surveillance footage showed that Green had left the bag earlier in the night. The mail in the bag belonged to several individuals with addresses in the same region as the previous batch of mail Green turned in.

53.     On December 16, 2020, a neighbor of the Defendant Property reported to EPD that June Green had stolen a package off her front porch. A middle-aged man returned the package later that day and claimed it had been misdelivered. The neighbor did not want to pursue charges but wanted EPD to speak to Green about the incident.

54.     On June 9, 2022, June Green brought a bicycle to EPD that she found at the Defendant Property. The bicycle was inoperable and was destroyed. On August 10, 2022, she brought EPD another bicycle found at the Defendant Property. The bicycle did not match any reports of stolen bicycles but was logged as evidence.

### 3. Animal control issues

55.     On April 19, 2016, EPD responded to the Defendant Property at June Green's request for assistance with her cats. Animal Control had previously received reports of up to 30 cats living at the Defendant Property and Green had previously been cited for her failure to license the five cats she admitted to possessing. Green

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 26

reported one cat and five kittens had died while she was away for several days. She was unsure how many cats she currently had, but indicated it was fewer than 30. She was unwilling to give up all the cats and would not allow animal control into the house. Based on Green's admissions supporting charges of animal cruelty, EPD obtained a search warrant for the Defendant Property to remove any animals. In addition to eight cats Green had voluntarily relinquished, EPD seized 10 cats, one kitten, and one deceased guinea pig.

56.    On July 27, 2019, a citizen found one of June Green's dogs running loose and brought the dog to animal control. When Green claimed the dog, she was advised to provide proof of the dog's rabies vaccination. The dog was found at large again on September 28, 2019, and turned in to animal control. Green did not provide proof of the dog's rabies vaccination after an additional warning and on October 2, 2019, she was issued an infraction. The following day, at approximately 8 p.m., EPD responded to an alarm at the animal control facility. A window was open with the air conditioner on the ground outside it, and when animal control personnel arrived, they discovered June Green's dog was missing from its kennel inside the building and no other dogs or items were taken. Animal control personnel advised EPD that Lisa Schelper had called earlier that day inquiring how to get the dog out of impound and was told it would cost $150. EPD responded to the Defendant Property, where they discovered Green's dog inside the residence. Green and Schelper denied asking anyone to steal

the dog, although Schelper admitted a visitor to the Defendant Property had stolen the dog of his own volition and returned it to the Defendant Property.

57.     On June 8, 2020, EPD responded to an animal noise complaint at the Defendant Property. A dog was barking in the front yard, and when the officer approached the house, the dog ran around the officer and then escaped the yard through a hole in the fence. EPD was unable to contact anyone at the Defendant Property. On September 8, 2020, EPD responded to another animal noise complaint at the Defendant Property. A dog was again barking in the front yard of the property and escaped through the fence when the officer approached, and another dog was barking from inside the house. EPD was unable to contact anyone at the Defendant Property. A neighbor informed the officer that the dog in the yard barked constantly and frequently escaped. EPD cited Green with an infraction for the noise violation. On October 22, 2020, at approximately 11:30 p.m., EPD responded to another noise complaint and found a dog barking nonstop in the back yard of the Defendant Property. EPD was unable to contact anyone at the Defendant Property but cited Green again for the noise violation. The complainant called again at 12:30 a.m. to report the dog was still barking.

### 4. Code violations and other nuisance activity

58.     On August 18, 2017, after several warnings, EPD cited June Green for a code violation after she had failed to remove tall vegetation in her yard and along the alley. On August 22, 2017, also after several warnings, EPD additionally cited her for

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 28

a large accumulation of garbage bags in the back yard. On September 27, 2017, she was cited for failing to abate the garbage accumulation.

59.    On February 12, 2018, June Green was cited again for the garbage accumulation, which had grown to include two large appliances, a mattress, a kitchen table, and a household chair. She was cited for failing to abate the nuisance on April 23, 2018.

60.    On December 19, 2018, June Green was arrested at the Defendant Property for her failure to appear in Lower Kittitas County District Court regarding the code violations for the garbage accumulation and weed growth at the Defendant Property. Green was cited again on January 7, 2019, after EPD observed a large accumulation of garbage bags in the back yard and on the back porch and three children's car seats, a recliner, and miscellaneous unused household items on the front porch.

61.    On July 30, 2019, after several warnings, EPD cited and arrested June Green for code violations involving appliances and garbage in the back yard.

62.    On September 27, 2019, library staff contacted EPD to advise that a man and a women had just entered the building and gone directly into the women's restroom, and the library wanted the two trespassed. While EPD was en route, library staff updated that the pair had left and walked to the Defendant Property, and the man was known to library staff as a resident of the Defendant Property. EPD contacted the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 29

pair at the Defendant Property, informed them both they were trespassed indefinitely from the library, and arrested the man on an outstanding warrant.

63.     On November 26, 2019, EPD observed an accumulation of household goods and garbage in the back yard of the Defendant Property. After EPD gave June Green notice of the code violations and she failed to abate them, On December 23, 2019, EPD cited Green for the violations.

64.     On May 12, 2021, an EPD officer was in the alley behind the Defendant Property and observed multiple large piles of debris in the backyard, as well as a dilapidated travel trailer. In the front yard there was a motorhome with missing windows, a red Nissan passenger vehicle, and a piece of furniture near the sidewalk, and there were overgrown weeds and vegetation throughout the Defendant Property. The officer knew from experience that the travel trailer and motorhome had been present on the Defendant Property for at least two years. EPD sent a courtesy letter to June Green care of the June B. Green Trust requesting the debris and inoperable vehicles be removed and the vegetation cut back. The trustee called EPD on May 25 and advised that the vegetation had been cut back and Green wanted to remove the travel trailer and motorhome but did not have the titles. EPD informed the trustee that EPD could prepare a junk vehicle affidavit if given VINs for the vehicles. EPD spoke with the trustee again after no progress was made, and the trustee advised she had not been able to contact Green or the other residents of the Defendant Property. EPD received no further contact from the trustee. On August 25, 2021, when the violations

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 30

had not been abated after a formal abatement nuisance abatement order, EPD cited June Green for the code violations.

65.    On March 10, 2022, June Green called EPD to report that someone had spraypainted "pedophiles" on the sidewalk in front of the Defendant Property. Green was unsure who had done so.

66.    On May 15, 2022, June Green called EPD to report there was a woman in the backyard of the Defendant Property lighting paper on fire and throwing it at the house. Green wanted the woman trespassed from the Defendant Property. EPD responded to the Defendant Property and advised the woman she was trespassed.

67.    On October 14, 2023, June Green called EPD to report that a visitor damaged the fence and mailbox at the Defendant Property. When EPD spoke to the visitor, she reported that Green had said racist things to her and suggested the damage to the fence was from Green's dogs. She expressed frustration that EPD was talking to her when Green had "all the meth in the world." The visitor was trespassed from the Defendant Property at Green's request.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, the United States alleges that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7) because it is real property that was used or intended to be used, in any manner or part, to commit, or to facilitate the commission of the Controlled Substances Act.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 31

1

2          WHEREFORE, the United States of America requests that notice of this action

be given to all persons who reasonably appear to be potential claimants of interests in

the properties; that the Defendant Properties be forfeited and condemned to the United

States of America; that the plaintiff be awarded its costs and disbursements in this

action and for such other and further relief as this Court deems proper and just.

          DATED this 24th day of June 2024.

                                   Vanessa R. Waldref
                                   United States Attorney

                                   s/ Brian M. Donovan
                                   Brian M. Donovan
                                   Assistant United States Attorney


                                   VERIFICATION

          I, Derek Holmes, hereby verify and declare under penalty of perjury that I am a

Detective with the Ellensburg Police Department, in Ellensburg, Washington, that I

have read the foregoing Verified Complaint *in rem* and know the contents thereof, and

that the matters contained in the Verified Complaint are true to my own knowledge,

except that those matters herein stated to be alleged on information and belief and as

to those matters I believe them to be true.

          The sources of my knowledge and information and the grounds of my belief are

the official files and records of the United States, information supplied to me by other

law enforcement officers, as well as my investigation of this case, together with

others, as a Detective.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 32

1    I hereby verify and declare under penalty of perjury that the foregoing

2 information is true and correct.

3    DATED this 21 day of June 2024.

4

5

6    Derek Holmes, Detective
     Ellensburg Police Department
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* - 33